IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Case No. 11-cv-02552-RBJ

ALAN LEWIS,

      Applicant,

v.

RICK THALER, Director, Texas Department of Criminal Justice, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

      This matter comes before the Court on the *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("the Application") (Doc. #1) filed September 29, 2011, by Applicant Alan Lewis.  Respondent Attorney General of the State of Colorado[1] has filed an Answer to Application (Doc. #27) ("the Answer"), and Mr. Lewis has filed a Reply to Respondent's Answer (Doc. #28) ("the Traverse").  After reviewing the record, including the Application, the Answer, the Traverse, and the state court record, the Court concludes that the Application should be denied and the case dismissed with prejudice.

## I.  Background

      Mr. Lewis currently is incarcerated in a state prison in Texas.  He is challenging in this action the validity of his Colorado convictions in Morgan County District Court

---

[1]Respondent Rich Thaler was not required to file an Answer.  All references to "Respondent" in this order refer to the Attorney General of the State of Colorado.

case number 00CR23.  The charges against Mr. Lewis in the Morgan County case arose out of an incident in October 1999 when Mr. Lewis entered the home of the eighty-two-year-old victim on the pretense of wanting to purchase her home, attempted to sexually assault her, and physically assaulted her when she resisted.  On January 13, 2000, the Morgan County District Court issued an arrest warrant and on January 28, 2000, Mr. Lewis was charged by information in the Morgan County case.  At the time the Morgan County charges were filed, Mr. Lewis was in custody in Texas facing unrelated charges.  Mr. Lewis also was charged with crimes in an unrelated case in Mesa County, Colorado.  He was convicted in the Texas case in July 2002.

In September 2002 Mr. Lewis wrote a letter to the Morgan County District Attorney inquiring about any charges that may be pending against him in Morgan County.  In October 2002, Mesa County authorities lodged a detainer against Mr. Lewis with prison authorities in Texas.  As a result of that detainer, Mr. Lewis was transported from Texas to Mesa County in November 2002.  Before being returned to Texas, Mr. Lewis was transported to Morgan County in January 2003 and advised of the Morgan County charges.  In September 2003, after Mr. Lewis had been returned to Texas, Morgan County authorities lodged a detainer against him with prison authorities in Texas.  Mr. Lewis then filed a request for disposition of the detainer and he was returned to Morgan County in November 2003 where he remained until his trial in September 2004.

Following a jury trial, Mr. Lewis was convicted in the Morgan County case of attempted first degree sexual assault on an at-risk adult by use of force, third degree sexual assault on an at-risk adult, and third degree assault on an at-risk adult.  The trial

court sentenced Mr. Lewis to concurrent prison terms of twenty years to life on the attempted first degree sexual assault conviction, forty years to life on the third degree sexual assault conviction, and two years on the third degree assault conviction. (*See* Doc. #8-1 at 7.)  On direct appeal, the Colorado Court of Appeals affirmed the judgment of conviction, vacated the sentence with respect to the third degree sexual assault conviction, and remanded the case for resentencing on that count.  *See People v. Lewis*, No. 05CA0976 (Colo. Ct. App. Feb. 22, 2007) (unpublished) (Doc. #8-3) ("*Lewis I*").  On July 23, 2008, the trial court resentenced Mr. Lewis to twenty-four years to life in prison on the third degree sexual assault conviction.  (*See* Doc. #8-1 at 2.)

Following his direct appeal, Mr. Lewis filed two motions seeking postconviction relief pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure in the Morgan County case.  (*See* Doc. #8-1 at 2, 4-5.)  On October 30, 2008, the trial court denied the Rule 35(c) motions without a hearing.  (*See id.* at 2)  The trial court's order was affirmed on appeal.  *See People v. Lewis*, No. 08CA2523 (Colo. Ct. App. Feb. 17, 2011) (unpublished) (Doc. #8-5) ("*Lewis II*").  On June 6, 2011, the Colorado Supreme Court denied Mr. Lewis' petition for writ of certiorari in the state court postconviction proceedings.  (*See* Doc. #8-6.)

Mr. Lewis asserts two claims for relief in the Application.  He contends in his first claim that he was denied due process and that his rights under Article IV(c) & (e) of the Interstate Agreement on Detainers Act (IADA) were violated.  Mr. Lewis specifically asserts that his rights under the IADA were violated because, after being brought to Colorado and appearing in the Morgan County District Court to be advised of the charges against him in January 2003, he was not brought to trial in a timely manner and

he was returned to Texas before the Morgan County charges were resolved.  Mr. Lewis

contends in his second claim that one of the attorneys who represented him, Stuart

Crespin, was ineffective.  Mr. Lewis alleges in support of the ineffective assistance of

counsel claim that, although Mr. Crespin filed a motion to dismiss the Morgan County

charges in April 2004 based upon violations of the IADA and obtained a continuance to

gather evidence to demonstrate the IADA had been violated, Mr. Crespin failed to

investigate and obtain evidence to support the IADA claim.

## II.  Standard of Review

The Court must construe the Application and other papers filed by Mr. Lewis

liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S.

519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However,

the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Lewis bears the burden of proof under § 2254(d).  *See

Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*,

131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 784.  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784.  In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "This 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Lewis seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id.* at

1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"  *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable
> requires considering the rule's specificity. The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations. [I]t is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks omitted, alterations in original). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Lewis bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III.  Discussion

### A.  IADA

As set forth above, Mr. Lewis first contends that he was denied due process and that his rights under Article IV of the IADA were violated because, after being brought to Colorado and appearing in the Morgan County District Court to be advised of the charges in January 2003, he was not brought to trial in a timely manner and he was returned to Texas before the Morgan County charges were resolved.  The Court notes that Mr. Lewis is not asserting any claim pursuant to Article III(c) of the IADA, which also contains a speedy trial provision that is triggered when a prisoner requests speedy disposition of a detainer.

The IADA is an interstate compact entered into by the compacting states with the consent of Congress.  *See Cuyler v. Adams*, 449 U.S. 433, 438-442 (1981).  Thus, the IADA is a law of the United States subject to federal construction.  *See Reed v. Farley*, 512 U.S. 339, 347 (1994).  The IADA "creates uniform procedures for lodging and executing a detainer, *i.e.*, a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime."  *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001).  The IADA is codified in Colorado at § 24-60-501 of the Colorado Revised Statutes.

Mr. Lewis specifically cites two provisions in Article IV of the IADA, the speedy trial provision and the anti-shuttling provision, that he maintains were violated.  The relevant speedy trial provision in Article IV(c) provides that:

> (c) In respect of any proceeding made possible by this
> article, trial shall be commenced within one hundred twenty
> days of the arrival of the prisoner in the receiving state, but

> for good cause shown in open court, the prisoner or his
>
> counsel being present, the court having jurisdiction of the
>
> matter may grant any necessary or reasonable continuance.

Colo. Rev. Stat. § 24-60-501.  The anti-shuttling provision, found in Article IV(e),

provides that:

> (e) If trial is not had on any indictment, information, or
>
> complaint contemplated hereby prior to the prisoner's being
>
> returned to the original place of imprisonment pursuant to
>
> article V(e) hereof, such indictment, information, or complaint
>
> shall not be of any further force or effect, and the court shall
>
> enter an order dismissing the same with prejudice.

*Id.*

Mr. Lewis contends that his right to a speedy trial under Article IV(c) was

triggered with respect to all Colorado charges, including the Morgan County charges,

when he was brought to Colorado by Mesa County authorities in November 2002 or, at

the very latest, when he appeared in the Morgan County District Court in January 2003

to be advised of the Morgan County charges.  Mr. Lewis argues the anti-shuttling

provision in Article IV(e) was violated because he was returned to Texas prior to

resolution of the Morgan County charges after he appeared in court in Morgan County

in January 2003 and was advised of the charges against him.  Mr. Lewis argues in

support of these claims that authorities in Morgan County had issued a detainer with

respect to the Morgan County charges before he was brought to Colorado by Mesa

County authorities in November 2002.

The trial court made extensive factual findings relevant to Mr. Lewis' IADA claim that are set forth in *Lewis I* as follows:

> (1)  The offenses for which defendant was charged [in Morgan County] occurred on October 27, 1999, and an arrest warrant was issued January 13, 2000.

> (2)  On July 16, 2002, defendant was sentenced to twenty years in the Texas Department of Corrections (TDOC) on unrelated offenses.

> (3)  On September 16, 2002, the Morgan county district attorney received a letter from defendant inquiring whether any charges were pending against him in Morgan county and, if so, requesting information about the charges.

> (4)  Mesa county lodged a detainer against defendant in Texas on October 2, 2002.  In November 2002, defendant was transported from Texas to Mesa county and placed in custody there on charges unrelated to the incident in Morgan county.

> (5)  On January 1, 2003, the Morgan county sheriff's office sent a letter to the district attorney, stating that the sheriff's office was unable to transport defendant from Mesa county to Morgan county because of adverse weather conditions. The letter also stated, "We have had a detainer with Terrant County, Texas since January 15, 2000, on [the Morgan county case]."

> (6)  The Morgan county arrest warrant was executed on January 3, 2003, and defendant was brought before the court on that day for an advisement of his rights.  The prosecution filed a motion to determine whether defendant's September 16 letter triggered the speedy trial provisions of the IAD.

> (7)  On January 23, 2003, defendant, through counsel, filed a "Motion to Withdraw Request for Speedy Trial Pursuant to Interstate Agreement on Detainers."  Shortly thereafter, defendant's case in Mesa county was resolved and he was transported back to Texas.

> (8)  Defendant did not appear in Morgan county court on his scheduled hearing date, February 7, 2003.  The court

determined that the IAD did not apply.  On February 21, 2003, a bench warrant issued for defendant's arrest.

(9)  On or about September 25, 2003, the Morgan county district attorney lodged a formal detainer against defendant with the TDOC.

(10)  On October 31, the court received a copy of "Defendant's Request for Disposition of Indictments" dated October 23, 2003, and other documents from the Texas Department of Criminal Justice.

(11)  On November 3, 2003, the court received a letter from defendant requesting disposition of "indictments, informations, or complaints."

(12)  The defendant was returned to Morgan county on November 18, 2003, where he remained until the date of the hearing and his subsequent trial.

(13)  On March 19, 2004, defendant filed a motion to dismiss based on a violation of his speedy trial rights under the IAD.

*Lewis I* at 2-5 (Doc. #8-3 at 4-7).  The trial court's conclusions based on these factual findings also are set forth in *Lewis I*:

(1)  The January 15, 2000, letter from the sheriff's department was not a detainer because defendant had not yet been sentenced in the Texas case.

(2)  The court also determined that, even if the letter constituted a valid detainer, defendant's speedy trial rights were not violated because defendant failed to provide notice as required under the IAD.

(3)  A request for temporary custody under the IAD was not made until September 2003 and, therefore, defendant's "mere presence" in Morgan county on January 3, 2003 did not trigger the provisions of the IAD.

(4)  The anti-shuttling provisions of the IAD were not violated because: (a) at the time defendant was transported between Texas and Colorado there was no detainer against defendant from Morgan county; (b) defendant had not made any request for disposition of his Morgan county case; and (c) there was no evidence that the trial court or the district

> attorney's office had received notification from TDOC of
> defendant's request for final disposition of the charges
> against him.

*Lewis I* at 5-6 (Doc. #8-3 at 7-8).

On appeal, the Colorado Court of Appeals addressed these findings and

conclusions and reasoned as follows:

> The record supports the trial court's findings and we agree
> with its conclusions.  Because defendant was not serving a
> sentence in Texas until July 16, 2002, a detainer could not
> be lodged against him before that date.  Although the
> sheriff's department's letter refers to a January 15, 2000,
> detainer, it is clear from the testimony at the hearing and the
> provisions of the IAD that this letter was sent simply to
> inform the TDOC that an active arrest warrant existed in
> Morgan County and was not a detainer as contemplated
> under the IAD.  Moreover, an information in this case was
> not filed until January 28, 2000, after the sheriff department's
> notification to the Texas authorities.  Thus, the letter does
> not constitute a detainer for the purposes of the IAD.  Since
> the sheriff's department letter does not constitute a detainer
> under the IAD, there was no detainer lodged against him
> from Morgan county when he appeared in that court.
> Accordingly, the anti-shuttling provisions in the IAD were not
> violated by his appearance in court and his subsequent
> return to Texas.  The trial court did not err in denying
> defendant's motion to dismiss the charges against him.

*Lewis I* at 6-7 (Doc. #8-3 at 8-9).

Mr. Lewis disagrees with these factual findings and conclusions and he insists

that he was shown documents in Texas in 2002 regarding the Morgan County charges

that constituted a detainer.  According to Mr. Lewis, he was prompted to write the letter

he sent to the Morgan County District Attorney in September 2002 inquiring about

pending charges only after being shown documents in Texas in 2002 regarding those

charges.

Although Mr. Lewis disagrees with the state court's factual findings, those factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).  Thus, the determination by the Colorado courts that no detainer regarding the Morgan County charges existed at the time Mr. Lewis was brought to Colorado in November 2002 and when he appeared in the Morgan County District Court in January 2003 is presumptively correct.  This presumption may be rebutted, but Mr. Lewis bears the burden of rebutting the presumption by clear and convincing evidence.  *See id.*

Mr. Lewis fails to overcome the presumption of correctness because he has not presented clear and convincing evidence that demonstrates the existence of a detainer regarding the Morgan County charges at any time prior to September 2003.  Mr. Lewis has not presented to the Court the documents he allegedly was shown by Texas prison officials in 2002 that he contends were a detainer with respect to the Morgan County charges and his self-serving statement that he was presented with a detainer is not clear and convincing evidence.  The Court recognizes that Mr. Lewis has filed a motion seeking discovery (Doc. #29) to uncover the evidence he contends will support his claim.  However, that motion will be denied because "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen*, 131 S. Ct. at 1398.  Therefore, because Mr. Lewis has not presented this alleged evidence to the state courts, the Court could not consider the evidence even if it does exist.

Mr. Lewis also fails to overcome the presumption of correctness that attaches to the state court's factual determination that the letter written by a Morgan County sheriff's deputy in January 2003, which referred to a "detainer" that existed since January 15,

2000, was merely a reference to the existence of an active arrest warrant in Morgan County.  To the extent Mr. Lewis contends the Morgan County arrest warrant was a detainer that triggered his rights under the IADA, the Court disagrees.  The fact that an arrest warrant was issued on January 13, 2000, which is undisputed, does not demonstrate a detainer existed because an arrest warrant, by itself, is not a detainer. *See United States v. Fulford*, 825 F.2d 3, 10 (3d Cir. 1987).

Because Mr. Lewis fails to overcome the presumption of correctness that attaches to these factual findings, the Court cannot conclude that the state court's adjudication of his IADA claim was "contrary to, or involved an unreasonable application of, clearly established federal law," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(2).  In short, the absence of a detainer regarding the Morgan County charges at the time Mr. Lewis was brought to Colorado in November 2002 and when he appeared in the Morgan County District Court in January 2003 means the protections of the IADA were not triggered at that time and were not violated.  *See United States v. Dowdell*, 595 F.3d 50, 63 n.10 (1st Cir. 2010) (noting that "[t]he IAD only applies to prisoners against whom detainers have been filed."); *United States v. Beard*, 41 F.3d 1486, 1489 (11th Cir. 1995) (rejecting IADA claim on the grounds that, "[b]ecause a detainer was never filed, the protections of the IADA were never triggered."); *United States v. Jones*, 938 F.2d 447, 449 (3d Cir. 1991) (reasoning that, "[b]ecause there was no detainer, the IAD was not triggered and could not have been violated.").  Mr. Lewis' reliance on *Alabama v. Bozeman*, 533 U.S.

146 (2001), is misplaced because there was no question in that case regarding the existence of a detainer.

Finally, even if the Court were to conclude that the IADA was violated, Mr. Lewis still is not entitled to relief in this habeas corpus action unless he demonstrates the existence of special circumstances because the rights created by the IADA are statutory rights and not constitutional rights. *See Knox v. Wyo. Dept. of Corrections*, 34 F.3d 964, 967 (10th Cir. 1994). In *Knox*, the United States Court of Appeals for the Tenth Circuit described a qualifying prejudicial error as "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Id.* at 968 (internal quotation marks omitted, alteration in original).

Mr. Lewis does not allege that the shuttling or delay in commencing his trial rendered the trial unfair or prevented him from mounting a defense in any way. There also is no indication in the record before the Court that the alleged IADA violations resulted in the conviction of an innocent person. At best, Mr. Lewis is asserting only technical violations of the IADA. Although a technical violation of the IADA is sufficient to obtain relief on direct appeal, *see Bozeman*, 533 U.S. at 153, the absence of any special circumstances means Mr. Lewis is not entitled to relief in this habeas corpus action on collateral review, *see Pethtel v. Ballard*, 617 F.3d 299, 305 (4th Cir. 2010).

For all of these reasons, the Court finds that Mr. Lewis is not entitled to relief with respect to claim one in the Application.

**B. Ineffective Assistance of Counsel**

The Court next will address the ineffective assistance of counsel claim.  As noted above, the ineffective assistance of counsel claim is limited to allegations regarding the conduct of Stuart Crespin.  Mr. Lewis specifically alleges that Mr. Crespin was ineffective because, although Mr. Crespin filed a motion to dismiss the Morgan County charges in April 2004 based upon violations of the IADA and obtained a continuance to gather evidence to demonstrate the IADA had been violated, Mr. Crespin failed to investigate and obtain evidence to support the IADA claim.

Respondent first argues that the ineffective assistance of counsel claim should be dismissed as unexhausted and procedurally barred because Mr. Lewis did not raise this specific ineffective assistance of counsel claim before the trial court in a postconviction Rule 35(c) motion and, as a result, the Colorado Court of Appeals declined to consider the claim on appeal.  Before the Court may address the substance of the exhaustion and procedural bar argument, the Court must determine whether the argument has been waived.

During the preliminary consideration of the Application, Magistrate Judge Boyd N. Boland ordered Respondent to file a Pre-Answer Response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A).  In response to that order, Respondent filed a Pre-Answer Response (Doc. #8) stating, in pertinent part, that Mr. Lewis fairly presented his ineffective assistance of counsel claim to the state courts.  (*See* Doc. #8 at 10.)  However, Respondent also stated in the Pre-Answer Response that "Respondent does not waive . . . the 28 U.S.C. § 2254(b)(1)(A) exhaustion requirement if this Court disagrees with our response."  (*Id.* at 2.)  Because Respondent did not

argue that the ineffective assistance of counsel claim was unexhausted, Magistrate Judge Boland indicated in the Order Drawing Case that Respondent had conceded the claim is exhausted.  (*See* Doc. #14 at 3.)

Respondent contends in the Answer that the Court should take a fresh look at the questions of exhaustion and procedural bar because Respondent never expressly waived exhaustion and because the statement in Respondent's Pre-Answer Response that the ineffective assistance of counsel claim is exhausted was based on a mistaken view of the facts.  For the reasons discussed below, the Court finds that the affirmative defense of exhaustion of state remedies has not been waived.

As an initial matter, Respondent argues that the law of the case doctrine does not prevent the Court from taking a fresh look.  "The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  The law of the case doctrine applies to all issues previously decided either explicitly or by necessary implication.  *See Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995).  However, "[w]hether the 'law of the case' doctrine applies to questions of fact, such as whether a particular claim for federal habeas relief has been exhausted, is unclear."  *Johnson v. Champion*, 288 F.3d 1215, 1226 (10th Cir. 2002) (internal citation omitted).

Assuming that the law of the case doctrine does apply to the question of whether a particular claim in a habeas corpus action is exhausted, Magistrate Judge Boland's acknowledgment in the Order Drawing Case that Respondent conceded the ineffective

assistance of counsel claim was exhausted does not demonstrate that the question of exhaustion with respect to the ineffective assistance of counsel claim actually was decided.  In other words, Magistrate Judge Boland did not actually decide or rule that the ineffective assistance of counsel claim is exhausted.  Instead, Magistrate Judge Boland merely noted that Respondent did not argue the ineffective assistance of counsel claim was unexhausted.

Furthermore, the law of the case doctrine "'does not bind a judge to following rulings in the same case by another judge of coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine.'"  *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (quoting *United States v. Johnson*, 12 F.3d 1540, 1544 (10th Cir. 1993)).  In this context, "[t]he relevant prejudice is limited to lack of sufficient notice that one judge is revisiting the decision of a prior judge and the opportunity to be heard with respect to the new ruling."  *Id.*

Mr. Lewis fails to demonstrate the existence of any prejudice resulting from Respondent's failure to raise the exhaustion and procedural bar arguments in their Pre-Answer Response.  As noted above, Magistrate Judge Boland did not actually decide the ineffective assistance of counsel claim was exhausted.  Therefore, once Respondent argued in the Answer that the ineffective assistance of counsel claim is unexhausted and procedurally barred and that the Court was not prohibited from addressing those issues, Mr. Lewis was placed on notice that the exhaustion and procedural bar issues may be addressed and that he should address those arguments in his Traverse.  It is apparent that Mr. Lewis understood the exhaustion argument might be addressed following Respondent's Answer because he actually addresses the

exhaustion argument in his Traverse.  In particular, Mr. Lewis argues in the Traverse

that the ineffective assistance of counsel claim is exhausted because it was raised in

the state court postconviction Rule 35(c) proceedings.  (*See* Doc. #28 at 3.)  Therefore,

the Court finds that the law of the case doctrine does not preclude consideration of the

exhaustion and procedural bar arguments raised by Respondent in the Answer.

The Court also agrees with Respondent that the defense of exhaustion of state

court remedies has not been waived.  A waived defense "is one that a party has

knowingly and intelligently relinquished."  *See Wood v. Milyard*, 132 S. Ct. 1826, 1832,

n.4 (2012).  With respect to the issue of exhaustion of state court remedies in a habeas

corpus action in particular, "[a] State shall not be deemed to have waived the

exhaustion requirement or be estopped from reliance upon the requirement unless the

State, through counsel, expressly waives the requirement."  28 U.S.C. § 2254(c).

Even if Respondent's statement that the exhaustion requirement was not being

waived were not sufficient to prevent a waiver, the fact that Respondent initially

conceded exhaustion based on a mistake of fact means the defense was not knowingly

and intelligently relinquished.  *See Day v. McDonough*, 547 U.S. 198, 211 (2006)

(finding no waiver of affirmative defense of timeliness when concession of timeliness

was based on inadvertent miscalculation).  At most, it could be argued that Respondent

forfeited the defense.  *See Wood*, 132 S. Ct. at 1832 n.4 (defining a forfeited defense as

"one that a party has merely failed to preserve").  However, even if Respondent did

forfeit the defense by raising it in the Answer after having conceded the issue in the Pre-

Answer Response, a federal court has the authority to raise a forfeited defense on its

own initiative.  *See Wood*, 132 S. Ct. at 1834.  In the instant action, the Court is not

raising the defense sua sponte and, as discussed above, Mr. Lewis has had a fair

opportunity to respond to the exhaustion and procedural bar argument.  Therefore, the

Court will address Respondents' argument that the ineffective assistance of counsel

claim is unexhausted and procedurally barred.

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus

may not be granted unless it appears that the applicant has exhausted state remedies

or that no adequate state remedies are available or effective to protect the applicant's

rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kan. State

Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is

satisfied once the federal claim has been presented fairly to the state courts.  *See

Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the

federal issue be presented properly "to the highest state court, either by direct review of

the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.

Furthermore, the "substance of a federal habeas corpus claim" must have been

presented to the state courts in order to satisfy the fair presentation requirement.  *Picard

v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252

(10th Cir. 1989).  Although fair presentation does not require a habeas corpus petitioner

to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal

quotation marks omitted), "[i]t is not enough that all the facts necessary to support the

federal claim were before the state courts."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982)

(per curiam).  A claim must be presented as a federal constitutional claim in the state

court proceedings in order to be exhausted.  *See Duncan v. Henry*, 513 U.S. 364, 365-

66 (1995) (per curiam).

Finally, "[t]he exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

The Court agrees with Respondent that Mr. Lewis did not raise in either of his Rule 35(c) motions before the trial court the specific ineffective assistance of counsel claim he raises in this action.  Mr. Lewis asserts, and the state court record reflects, that he filed two postconviction Rule 35(c) motions, one on November 14, 2007 (*see* State Court R., vol. II at 251-73), and one on October 2, 2008 (*see id.* at 334-64).  The Court has reviewed these Rule 35(c) motions and finds no mention in either motion of any claim that Mr. Crespin was ineffective by failing to investigate and obtain evidence to support the IADA claim after obtaining a continuance to do so in April 2004.  Although Mr. Lewis did raise such a claim in his opening brief to the Colorado Court of Appeals (*see* Doc. #8-7 at 15-21), the Colorado Court of Appeals in *Lewis II* declined to address the argument because it had not been raised in the trial court (*see Lewis II* at 10; Doc. #8-5 at 11).  Therefore, the Court finds that Mr. Lewis did not fairly present to the state courts the particular ineffective assistance of counsel claim he is asserting in this action.

Although Mr. Lewis failed to exhaust state remedies for his ineffective assistance of counsel claim, the Court may not dismiss that claim for failure to exhaust state remedies if Mr. Lewis no longer has an adequate and effective state remedy available to him.  *See Castille*, 489 U.S. at 351.  Mr. Lewis no longer has an adequate and effective state remedy available to him for two reasons.  First, Rule 35(c)(3)(VII) of the Colorado Rules of Criminal Procedure requires the denial of claims raised in a postconviction

Case 1:11-cv-02552-RBJ   Document 32   Filed 03/04/13   USDC Colorado   Page 23 of 25

motion that could have been raised in a prior appeal or postconviction proceeding. Second, any attempt to file another postconviction Rule 35(c) motion in Colorado state court would be untimely.  *See* Colo. Rev. Stat. § 16-5-402 (providing that a defendant convicted of felony other than a class 1 felony has three years to seek relief under Rule 35(c) unless he establishes good cause).  Therefore, the Court finds that the ineffective assistance of counsel claim is procedurally defaulted.

As a general rule, federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).  "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998).  A state procedural ground is adequate if it is "applied evenhandedly in the vast majority of cases." *Id.*  Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns.  *See Coleman v. Thompson*, 501 U.S. 722, 730 (1991).  Mr. Lewis' *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice.  *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

The Court finds that Rule 35(c)(3)(VII) of the Colorado Rules of Criminal Procedure is independent because it relies on state rather than federal law.  The Court also finds that Rule 35(c)(3)(VII) is adequate because it is applied evenhandedly by Colorado courts.  *See, e.g., People v. Vondra*, 240 P.3d 493, 494 (Colo. App. 2010) (applying Crim P. Rules 35(c)(3)(VI) & (VII) to reject claims actually raised in prior

postconviction motion or that could have been raised in a prior appeal).  Colorado's

statute of limitations for collateral attacks also is an independent and adequate state

procedural ground.  *See Klein v. Neal*, 45 F.3d 1395, 1398 (10th Cir. 1995).  In addition,

Mr. Lewis presents no argument that these rules are not independent and adequate.

Therefore, the ineffective assistance of counsel claim is procedurally defaulted and

cannot be considered unless Mr. Lewis demonstrates either cause and prejudice or a

fundamental miscarriage of justice.

To demonstrate cause for his procedural default, Mr. Lewis must show that some

objective factor external to the defense impeded his ability to comply with the state's

procedural rule.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "Objective factors

that constitute cause include interference by officials that makes compliance with the

State's procedural rule impracticable, and a showing that the factual or legal basis for a

claim was not reasonably available to [applicant]."  *McCleskey v. Zant*, 499 U.S. 467,

493-94 (1991) (internal quotation marks omitted).  If Mr. Lewis can demonstrate cause,

he also must show "actual prejudice as a result of the alleged violation of federal law."

*Coleman*, 501 U.S. at 750.  A fundamental miscarriage of justice occurs when "a

constitutional violation has probably resulted in the conviction of one who is actually

innocent."  *Murray*, 477 U.S. at 496.

Mr. Lewis raises no argument that might demonstrate good cause for his failure

to comply with Colorado's procedural rules or resulting prejudice.  He also fails to

demonstrate or argue that a failure to consider his ineffective assistance of counsel

claim will result in a fundamental miscarriage of justice.  Therefore, the Court finds that

the ineffective assistance of counsel claim is procedurally barred and must be dismissed.

## IV.  Conclusion

For all of these reasons, the Court finds that Applicant is not entitled to any relief and the habeas corpus application will be denied.  Accordingly, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. #1) filed September 29, 2011, by Applicant Alan Lewis is DENIED. It is

FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that the Motion for Leave to Request Discovery Pursuant to Rules 6, 7, 8 (Doc. #29) is DENIED.  It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.

Dated this 4th day of March,  2013

BY THE COURT:

R. BROOKE JACKSON
United States District Judge